IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

MEKAEL DESEAN DANIELS,

      Defendant.

CRIMINAL ACTION FILE

NUMBER 1:23-cr-154-TCB

## **O R D E R**

This case comes before the Court on Magistrate Judge John K. Larkins III's final report and recommendation ("the R&R") [66], which recommends that Defendant Mekael Desean Daniels's motions [23, 24, 25, 33, 34] to suppress be denied. Daniels has filed objections [77] to which the Government has responded [82].[1] The Government also filed a partial objection [74] to which Daniels has responded [85].

---

[1] Daniels generally objects "to all portions of the R&R, except the finding by the Magistrate Judge regarding his standing to challenge the search." [77] at 1. The Court notes his general objections and after careful consideration, finds that the R&R did not err. The Court addresses Daniels's specific objections in detail below.

## I.    Background[2]

Daniels is charged with (1) conspiracy to possess with intent to distribute cocaine and fentanyl and (2) possession with intent to distribute cocaine and fentanyl. The issues before the Court arise from the circumstances surrounding Daniels's arrest on December 9, 2022.

The night began with several members of the Drug Enforcement Administration's ("DEA") Financial Investigation Team surveying a condominium tower in Atlanta called the Eclipse. During their surveillance, the officers observed Daniels acting suspiciously and began gathering information on him.

This investigation included the use of a drug detection dog. After receiving permission from the property manager, the officers brought a canine, Brutus, to the ninth floor of the building. Brutus alerted on Unit 907.

Task Force Officer Michael DeWald then pursued a search warrant for Unit 907, which a state court judge later signed. After the search warrant was signed, the officers detained Daniels in the

---

[2] The Court gives a brief factual overview here. For a more detailed explanation, see the R&R's "Background" section. *See* [66] at 2–9.

building's parking lot. Before giving Daniels a *Miranda* warning, Officer DeWald asked Daniels where he lived. Daniels responded that he lived in Unit 907. Officer DeWald explained the situation with the drug detection dog alert and search warrant, and Daniels gave the officers the key to the unit.

Daniels challenges several aspects of the execution of the search of his residence and the statements he made to the officers. Additional relevant facts are discussed in the sections below.

## II.    Legal Standard

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)). This review may take different forms, however, depending on whether there are objections to the R&R. The district judge must "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1)(C). In contrast, those portions of the R&R to which no objection is made need only be reviewed for "clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (per curiam) (quoting

*Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005)).[3]

After conducting a complete and careful review of the R&R, the district judge "may accept, reject, or modify" the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

## III. Discussion

### A.    Standing

To start, the R&R concluded that Daniels has standing to challenge the search of Unit 907. The Government objected to this portion of the R&R and argues against its adoption.

---

[3]    *Macort* dealt only with the standard of review to be applied to a magistrate judge's factual findings, but the Supreme Court has held that there is no reason for the district court to apply a different standard to a magistrate judge's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when a magistrate judge's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a plain-error standard, but questions of law remain subject to de novo review).

1.    **Relevant Background**

Before delving into the substantive law, background information is necessary to assess the totality of the circumstances.[4]

Daniels was previously convicted of heroin trafficking. He was sentenced to 143 months' imprisonment followed by eight years of supervised release. At the time of Daniels's 2022 arrest, he was on supervised release. Among his terms of supervised release, Daniels was required to notify his supervising probation officer within seventy-two hours of any changes of residence.

In October 2022, Daniels decided to move to downtown Atlanta. He worked with an individual named Jason to lease an apartment. Jason told Daniels that Daniels's felony convictions would prevent him from obtaining a lease from the landlord. Accordingly, Daniels sublet Unit 907 from Jason, so that Daniels would not have to put his name on the lease. Daniels did not inform his probation officer of this change of residence.

---

[4] Again, this background discussion is brief. For a fuller picture of the situation, see the R&R's background section. [66] at 11–13.

The situation is further complicated because Jason obtained the underlying lease by fraudulently using identifying information of an identity theft victim named "Jason Harville." The real Jason Harville did not lease Unit 907 and did not authorize anyone to do so in his name.

### 2. Discussion

#### a. Legal Standard

The Fourth Amendment protects the rights of the American people against "unreasonable searches and seizures." U.S. Const. amend. IV. This is a vital protection. It is not, however, a boundless one, for "[p]rivacy is personal." *Presley v. United States*, 895 F.3d 1284, 1289 (11th Cir. 2018) (citations omitted).

To challenge a search or seizure as unreasonable, a person must have "a reasonable expectation of privacy in the object of the challenged search." *United States v. Davis*, 109 F.4th 1320, 1327 (11th Cir. 2024) (quoting *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc)). This principle is known as Fourth Amendment standing, not to be confused with Article III standing. *See Ross*, 963 F.3d at 1061 (noting that Fourth Amendment standing is a "useful shorthand for capturing

the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits" (quoting *Byrd v. United States*, 584 U.S. 395, 410 (2018))).

Evaluating a defendant's reasonable expectation of privacy is a two-fold inquiry: (1) the defendant must have a subjective expectation of privacy in the object of the search and (2) the privacy expectation must be one that "society is prepared to recognize . . . as objectively reasonable." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008) (per curiam).

### b.    Summary of Positions

Here, neither party contests the R&R's conclusion that Daniels had a subjective expectation of privacy in the apartment unit. There is much debate, however, over whether Daniels's expectation of privacy in the apartment was objectively reasonable.

The R&R held that Daniels did have an objectively reasonable expectation of privacy and therefore had Fourth Amendment standing to challenge the search. The magistrate judge reasoned that because

Georgia property law requires a landlord to go through an eviction process (rather than self-help) to remove unlawful tenants, Daniels had a reasonable expectation of privacy in the apartment. *See* [66] at 19 (holding that because "the landlord of Unit 907 would not be able to resort to self-help to remove Daniels (or Jason), but would instead have to avail himself of the eviction process" that "Daniels had an expectation of privacy in Unit 907, even if his presence in the Unit was tainted by fraud and illicit purpose, that society recognizes.").

The R&R based this holding on the Seventh Circuit's decision in *United States v. Thomas*, 65 F.4th 922 (7th Cir. 2023). There, the court held that the defendant had an "interim" expectation of privacy in a leased condo that was obtained by fraud. The court held that it did not matter if "[the defendant] knew that he had deceived his landlord in obtaining the lease. Georgia has codified his expectation that his tenancy could not be revoked without notice and an opportunity for judicial process, which means that his expectation of privacy in the interim is one that society recognizes as reasonable." *Id.* at 924.

The Government, however, argues that Daniels did not have an objectively reasonable expectation of privacy in the apartment because

8

his occupancy was unlawful on multiple levels. The Government posits that the R&R erred by relying on Georgia property law to determine the scope of the objective expectation of privacy and argues that "one who is wrongfully on the property has no objectively reasonable expectation of privacy there." [74] at 7.

### c.   Analysis

This question is close. That said, the Court ultimately agrees with the Government that Daniels did not have a reasonably objective expectation of privacy in the Unit, and thus lacks standing to challenge the evidence.[5]

As the Government notes, Daniels's residence in the unit was illicit on multiple levels. Most salient to the Court is that Daniels's residence at the unit violated the terms of his supervised release. The terms of Daniels's supervised release explicitly instruct him to "notify the probation officer within 72 hours of any change in residence." Judgment and Commitment as to Mekael Daniels, *United States v.*

---

[5] The Court declines to follow the Seventh Circuit's approach in *Thomas*. 65 F.4th 922 (7th Cir. 2023). The Court shares the Government's concerns, thoughtfully explicated in its brief, for the implications of *Thomas*'s reasoning. *See* [74] at 6–9.

*Daniels*, No. 1:10-cr-269-TCB, [80] at 4. He did not do so, and thus, his residence at the unit was in direct violation of this Court's orders.

Also noteworthy, his supervised release conditions stipulated that he "shall submit to a search and seizure of his person and property at the direction of his Probation Officer." *Id.* at 3. The Court specifically emphasized this condition to him at his sentencing as well. *Id.* at [130] at 27:15–16 ("[Daniels] shall submit to a search of his person, property, residence, and warn other residents that the premises may be searched.").

"[P]eople on supervised release have a 'significantly diminished [. . .] expectation of privacy.'" *United States v. Henderson*, 145 F. App'x 346, 350 (11th Cir. 2005) (per curiam) (quoting *United States v. Knights*, 534 U.S. 112, 120 (2001)). This is especially true here because Daniels's supervised release conditions specifically required him to submit his person and property to searches at the direction of his probation officer, and the Court emphasized this to him at his sentencing. *Samson v. California*, 547 U.S. 843, 852 (2006) ("[A]cceptance of a clear and unambiguous search condition 'significantly diminished [the

defendant's] reasonable expectation of privacy.'" (quoting *Knights*, 534 U.S. at 120)).

The Court finds that because Daniels violated the explicit terms of his supervised release, he did not have an objectively reasonable expectation of privacy in the unit. *See United States v. Lowe*, 117 F.4th 1253, 1265 (10th Cir. 2024) ("Here, the evidence establishes that [the defendant's] actions of obtaining and using the storage unit violated the terms of his supervised release. Consequently, on these facts, [the defendant's] claim to privacy from government intrusion is not one society would accept as objectively reasonable." (citation and quotation omitted)).

While the Court is convinced that Daniels did not have Fourth Amendment standing based on his violation of his supervised release terms, other circumstances bolster this holding.

For example, the unit's lease expressly forbade subletting without permission from the board of directors of the Eclipse Condominium Association, Inc. *See* [43-10] at 34 ("Subleasing and assignments of leases is not permitted without the prior written consent of the Board of Directors."). There is no evidence that Jason and Daniels had received

such written consent; in fact, the evidence suggests that the men were intentionally avoiding alerting the landlord to Daniels's presence because they believed that the landlord would not approve Daniels's tenancy in light of his previous felony convictions. [48] at 129 (responding to the Government's question on why he chose to rent from Jason, Daniels's explained "[b]ecause I was a convicted felony (sic), and he told me that they would run a background check on me if I -- he had put me on the lease."). Such unauthorized use of a property diminishes the objective reasonableness of Daniels's expectation of privacy in the unit. *See Lowe*, 117 F.4th at 1261 (noting that society was not prepared to recognize as reasonable an expectation of privacy where "the defendant 'did not [get] and would not [have gotten] permission' from the owner to enter the premises") (alteration in original) (citation omitted)).[6]

---

[6] Daniels argues that "during the relevant period to this case, the sublease agreement was valid, as Walters Family Trust – the only party with standing to invalidate the lease – had taken no action to address Harville's alleged conduct." [85] at 7. First, calling the unauthorized sublease "valid" is a misnomer. Further, even if the landlord did not take steps to void the underlying lease does not mean that Daniels's privacy interests would be unaffected. *See United States v. Johnson*, 584 F.3d 995, 1004 (10th Cir. 2009) (remarking that because a rental agreement was a contract voidable at the owner's option under Utah law, Defendant's expectation of privacy was lessened because the "contractual right to the storage unit was in jeopardy of rescission").

Also, the unit was leased using a stolen identity. *See Johnson*, 584 F.3d 995 at 1002 ("[T]he storage unit at issue here was obtained by fraud, and '[w]hatever expectation of privacy [Mr. Johnson] might assert is not a legitimate expectation that society is prepared to honor.'" (quoting *United States v. Caymen*, 404 F.3d 1196, 1201 (9th Cir. 2005))).

The Court acknowledges that the record indicates that Daniels is not responsible for this fraudulent act and may not have been aware of it. Accordingly, the Court puts the least weight on this level of fraud, though it contributes to the totality-of-the-circumstances analysis. *Id.* at 1004 (emphasizing that "a fraud was perpetrated, and the victim was a third-party" and the court refused to "be a party to this fraud by legitimizing [the defendant's] interest in the storage unit" in holding that the defendant did not have an objectively reasonable expectation of privacy in a storage unit obtained via identity theft).

Based on the totality of the circumstances, the Court finds that Daniels's stay at the unit was unauthorized and unlawful on several levels. Society is not willing to accept such an illicit stay as objectively reasonable. Accordingly, the Court holds that Daniels did not have

Fourth Amendment standing to challenge the object of the search and reverses the R&R on this point.

Because Daniels did not have Fourth Amendment standing to challenge the search, his objections to the R&R's conclusions regarding the search are moot. However, as shown below, his objections would be overruled regardless.

## B.    Scope of the R&R

Daniels first objects to the scope of issues discussed in the R&R. He argues that the R&R addressed issues that were not fully developed and requests that the Court reject the R&R and hold a full evidentiary hearing.

On March 21, 2023, an evidentiary hearing before the magistrate judge was held. [37]. The docket reflects that this hearing was specifically limited to arguments concerning "Defendant's standing to challenge the search of the apartment and his interactions with law enforcement following execution of the warrant." [35].

After the hearing, the magistrate judge allowed Daniels to file a supplemental brief. [37]. Daniels did so, solely addressing the two issues discussed at the evidentiary hearing. [51]. The Government filed

a response brief that encompassed all the issues under consideration regarding Daniels's motion to suppress. [56]. Daniels filed a reply brief, responding to each of the issues. [64].

Daniels argues that because discussion at the evidentiary hearing was limited to these issues, the other issues discussed in the R&R are "underdeveloped" and not yet ready for consideration.

The Court disagrees. Under Eleventh Circuit law, "'it is not an abuse of discretion to refuse to hold an evidentiary hearing where none of the material facts are in dispute' and when the court had 'all necessary facts to make a just and equitable determination of the case.'" *United States v. Macrina*, No. 1:20-cr-216-SCJ, 2022 WL 4080329, at *4 (N.D. Ga. Sept. 6, 2022) (quoting *Fla. Wildlife Fed'n Inc. v. Adm'r, U.S. Env't Prot. Agency*, 620 F. App'x 705, 708 (11th Cir. 2015)).

The Court finds that it possesses the requisite information to make a just and equitable determination of the case. And Daniels acknowledges that his reply brief addressed the full scope of issues discussed in the R&R. Accordingly, the Court holds that the magistrate judge did not abuse his discretion in limiting the evidentiary hearing to two discrete issues, and this objection will be overruled.

## C.    R&R's Conclusions

Daniels next objects to several statements in the R&R that he

claims were "unsupported" and "misplaced."

### 1.    Property Manager's Authority

First, Daniels argues that the R&R improperly concluded that the

officers had permission from the building manager to be in the locked

hallway. He argues that the Eclipse "was a secured and private building

and <u>not</u> an apartment complex," (though he does not clarify how this

distinction affects the outcome of this issue). [77] at 7. He contends that

no evidence was taken to support this position and argues a hearing

should be held to determine this issue.

This objection is irrelevant. As discussed below, Daniels lacks

standing to challenge the use of the drug dog in the hallway, and thus it

was not his decision to make, whether or not the manager could

consent.

Even if the manager did not have the authority to consent, that

would not change the outcome. The use of the drug dog in the hallway

would still be lawful because the officers relied on the manager's

apparent authority to allow access, and this belief was reasonable. *See*

*United States v. Weeks*, 666 F. Supp. 2d 1354, 1378 (N.D. Ga. 2009)
(noting that "[a] third party's consent to search is valid if that person
has . . . the apparent authority to consent to a search of that property"
and emphasizing that "[i]t is the reasonableness of the officers' conduct .
. . that is the focus of the Fourth Amendment inquiry under the
apparent authority doctrine") (citation omitted). This objection will be
overruled.

### 2.    Statement in Warrant

Daniels next asserts that the R&R made a factual finding that
Brutus the dog "would not alert unless the drug odor contamination was
substantial and/or recent." [77] at 7 (quoting [66] at 6). Daniels argues
that this statement "contradicts the testimony at the hearing that there
was no way to tell whether it was 'an ounce of marijuana or was it 115
kilos of cocaine and fentanyl pills.'" *Id.* (quoting [48] at 116:01–02).

Daniels mischaracterizes the R&R. The R&R was not making a
factual finding. Rather, this statement was directly quoted from the
warrant affidavit, and the R&R was simply reciting the information in
the affidavit. *See* [66] at 3–4. It was not adopting the information as the

truth but simply conveying it as helpful background. Daniels's objection
on this point will be overruled.

### 3.   Statement Regarding Drug Trafficking

Lastly, Daniels posits that the R&R improperly concluded that the
claims relating to drug trafficking in the warrant application related to
Daniels. Again, this objection is irrelevant. While discussing whether
the officers made a material misstatement or omission in the warrant,
the R&R noted that the statements regarding drug trafficking "can be
read to suggest that the officers were present at the Eclipse because of a
tip about Daniels, as opposed to the other investigation that initially led
the agents there." [66] at 43. But the R&R ultimately decided that it
made no difference to the outcome of whether or not there was probable
cause because the officers had an independent reason to focus on
Daniels that night. Accordingly, Daniels's objection will be overruled.

### D.   Dog Sniff of Hallway and Door

Daniels next objects to the R&R's conclusion that the dog sniff in
the hallway did not violate his Fourth Amendment rights.

After a thorough review of relevant law, the R&R concluded that
the warrantless dog sniff outside the door of Unit 907 did not violate the

Fourth Amendment. In particular, the R&R found that the hallway and exterior door area around Unit 907 did not constitute part of the curtilage of the home, and Daniels had no reasonable expectation of privacy in that area.  Further, the R&R concluded that a dog sniff of a residence from an exterior, non-curtilage area is not a search under the Fourth Amendment while acknowledging that there is a circuit split on this issue.

Daniels raises several points in his objection. First, he argues that the R&R wrongly characterized the building as an apartment building rather than a "building of privately owned units." [77] at 12. Daniels contends that all the cases that the R&R cites involve apartment buildings rather than condominium buildings and are thus distinguishable.

Notably, Daniels does not point to cases involving condominium buildings to support his position. In fact, as the Government aptly points out, the main case that Daniels relies on as an "on-point case" that "ruled squarely upon this issue in Defendant's favor" is a case involving an apartment building. [77] at 11; *see United States v. Whitaker*, 820 F.3d 849, 850 (7th Cir. 2016) ("Acting on information that

drugs were being sold from a certain apartment in Madison, Wisconsin, law enforcement obtained the permission of the apartment property manager and brought a narcotics-detecting dog to the locked, shared hallway of the apartment building.").

The Court finds the condominium-versus-apartment debate to be a distinction without a difference in this case.[7]

The fact remains that these are still residential units within a singular building that share common spaces and hallways, have secured entries and elevators, and the residents do not have exclusive control over these areas. These factors are true whether the resident owns or rents the unit itself, and these factors are relevant to a Fourth Amendment privacy analysis. Accordingly, the magistrate judge's analysis on apartment units is still appropriate for Daniels's situation.

Daniels also argues that the magistrate judge did not consider the full extent of privacy and security measures in the building guarding access to Unit 907. He explains that "[T]o get to the door of 907 - one must gain access to the [b]uilding at the street level, which is restricted,

_____

[7] It is also worth noting that Daniels did not own or directly lease the unit; he was subleasing it.

get past the concierge desk, which checks for uninvited guests, use an access fob to move the elevator, and access a key specific floor." [77] at 9. He argues that these security features made the hallway and area outside of his door constitutionally protected.

The Court disagrees. The magistrate judge emphasized that this analysis is fact-specific. *See* [66] at 34–35 ("[W]hether tenants have a reasonable expectation of privacy in the common areas of a multi-unit residential building is context-dependent and must be resolved in reference to the specific circumstances of each case."). The R&R then considered the context of Daniels's Unit in great detail.[8] *See id.* at 36–37.

The R&R noted that though access to the hallway was restricted and "excluded much of the public from the common area and the area around Unit 907's door," Daniels still did not have a reasonable expectation of privacy in the hallway because the restricted access

---

[8] Daniels criticizes the R&R for citing cases that are "distinguishable on the facts as well as non-binding upon this Court" and discounting cases with contrary holdings. The case he refers to that the R&R allegedly discounted, *United States v. Carriger*, 541 F.2d 545 (6th Cir. 1976), was considered and *not followed* by the Eleventh Circuit, as Daniels concedes. [77] at 10 ("In fact, the lower court cited *Carriger* only in the context that it was distinguished by the Eleventh Circuit."). Also, Daniels does not cite any Eleventh Circuit authority that bears the same facts as this case. Accordingly, his criticism is misplaced.

features did not give Daniels any control over the area. [66] at 36. The
Court agrees with this analysis, and the specific security features that
Daniels identifies does not alter it. The fact remains that Daniels had
no control or personal ability to exclude anyone from the hallway area.

Lastly, Daniels objects to the R&R's decision to not follow the
Seventh Circuit's holding in *United States v. Whitaker*, 820 F.3d 849
(7th Cir. 2016), and Justice Kagan's concurring opinion in *Florida v.
Jardines*, 569 U.S. 1, 12 (2013). He argues that the Court should find
that a warrantless dog sniff violates his reasonable expectation of
privacy because "[t]he simple act of living next to [other people] does not
invite a "canine forensic investigation." [77] at 12.

Daniels is wrong to assert that the R&R "disregarded" the logic of
those cases. Rather, the R&R spent considerable time explaining both
sides of this issue and observed that "reasonable minds may differ." [66]
at 39. The Court appreciates the magistrate judge's thoughtful
consideration of the issue and agrees with the analysis in the R&R. *See*
[66] at 37–41. So "absent a clear indication from the Supreme Court or
the Eleventh Circuit," the dog sniff did not intrude on Daniels's
reasonable expectation of privacy based on application of Supreme

22

Court precedent. [66] at 41; *see Illinois v. Caballes*, 543 U.S. 405, 409 (2005) ("[T]he use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests.").

The Court will overrule Daniels's objections on this point.[9]

### E.    Franks Hearing

Daniels next objects that the R&R erred by concluding that a *Franks*[10] hearing was unwarranted.

A *Franks* hearing is for "a defendant [to] challenge the veracity of an affidavit in support of a search warrant." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (per curiam). But "[a]ffidavits supporting arrest warrants are presumptively valid." *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009). To justify a *Franks* hearing, the defendant must "make[] a 'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit;

---

[9] Daniels also notes several "key facts at issue" without explaining their significance to his objections. The Court finds that these factual issues do not affect the outcome of its analysis.

[10] *Franks v. Delaware*, 438 U.S. 154 (1978).

and (2) the challenged statement or omission was essential to the finding of probable cause." *Arbolaez*, 450 F.3d at 1293 (quoting *Franks*, 438 U.S. at 155–56).

The R&R found that Daniels failed to satisfy both prongs. Daniels argues that the R&R improperly disregarded the fact that the warrant affidavit states that the dog alerted to the "smell of marijuana" rather than the more accurate characterization of "controlled substance." He argues that this statement contradicts the testimony of Officer DeWald that the canine cannot communicate a particular substance, and therefore a *Franks* hearing should have been granted.

The Court disagrees. The statement at issue in the affidavit reads: "Canine 'Brutus' indicated to the recent and/or 'substantial' contamination to the immediately detected odor of marijuana emanating from within the SUBJECT PROPERTY to a controlled substance." [23] at 11.

While this statement may contain factual and grammatical errors, the Court takes these mistakes to be the result of negligence rather than deception. The officer refers to the dog alerting to a "controlled substance" multiple times in the affidavit, including in the sentence at

24

issue and the sentence immediately preceding. *See id.* ("Canine 'Brutus' indicated for the presents [sic] of a controlled substance."). The Court understands this to be the point that the officer was trying to communicate, and the inclusion of the identifier marijuana was a careless mistake.[11]

Importantly, Daniels made no showing that the officer was intentionally trying to deceive by making this statement. *United States v. Flowers*, 531 F. App'x 975, 980 (11th Cir. 2013) ("[T]he defendant's attack 'must be more than conclusory' and the allegations of deliberate falsehood or reckless disregard for the truth 'must be accompanied by an offer of proof.'") (per curiam) (quoting *Franks*, 438 U.S. at 171). Therefore, he has not shown that the affiant's statement was made deliberately or with reckless disregard for the truth and fails to satisfy the first prong for a *Franks* hearing.

---

[11] The Court appreciates the Government's point that if the affiant had meant to deceive the judge, he would have picked a more dangerous controlled substance to name, such as heroin or cocaine—substances that were the bases for Daniels's prior convictions. Instead, he innocuously named marijuana, the least dangerous substance that the dog is trained to detect. *See* [82] at 17.

Daniels also has not demonstrated that the erroneous statement was material, failing to satisfy the second required prong for a *Franks* hearing.

Therefore, the Court finds that the R&R did not err in finding that a *Franks* hearing was unwarranted. Daniels's objection on this point will be overruled.

**F.    Motion to Suppress Statements**

Daniels has separately moved to suppress two statements: one that he made before hearing his *Miranda* rights and one that he made afterwards. The R&R concluded that neither statement should be suppressed.[12]

Daniels makes a specific objection to the R&R's conclusion regarding his pre-*Miranda* statement.

A brief background: On the night of the search and arrest, Officer DeWald interacted with Daniels in the parking lot of the Eclipse. He asked Daniels where he lived and Daniels answered that he was coming

---

[12] Daniels generally objects to the R&R's conclusion regarding his post-*Miranda* statement. After careful consideration of the R&R, the Court agrees with its conclusion regarding this statement and will overrule Daniels's objection.

from Unit 907, where he lived. *See* [48] at 94:24 ("I came from 907, my residence."). This is the statement at issue.

The R&R held that the public safety exception applied because Officer DeWald "'reasonably believed that he or his team members could be in danger upon entering the residence,' . . . that it was therefore appropriate to ask Daniels where he lived to protect the officers who were about to execute the search warrant." [66] at 52 (quoting *United States v. Ochoa*, 941 F.3d 1074, 1098 (11th Cir. 2019)).

Daniels objects on the basis that "Agent DeWald testified that he had time to read *Miranda* rights to Defendant and yet chose not to." [77] at 13.

"The public safety exception allows officers to question a suspect without first Mirandizing him when necessary to protect either themselves or the general public." *United States v. Williams*, 784 F. App'x 707, 708 (11th Cir. 2019) (per curiam) (quoting *United States v. Newsome*, 475 F.3d 1221, 1224–25 (11th Cir. 2007) (per curiam)). The exception does not depend on the subjective motivation of the officer. *See New York v. Quarles*, 467 U.S. 649, 656 (1984) ("In a kaleidoscopic situation . . . where spontaneity rather than adherence to a police

manual is necessarily the order of the day, the application of the exception . . . should not . . . depend on post hoc findings at a suppression hearing concerning the subjective motivation of the arresting officer."). Further, officers are not expected to "craft a perfect question in the heat of the moment." *Newsome*, 475 F.3d at 1225.

The Court finds that the R&R correctly determined that the public safety exception applies. Officer DeWald's question to Daniels asking where he lives was appropriate in the circumstances. The officers had just received the search warrant and needed to determine the safety of the unit, including Daniels's connection to the unit and whether others were still inside. In context, the question makes sense: Officer DeWald needed to confirm Daniels's connection to the unit before he could ask whether others who could pose a threat were still in the unit. This situation falls under the public safety exception because the officers needed to confirm that the unit was safe to enter and execute the search warrant.

Further, the amount of time needed to read *Miranda* rights is not a key factor when considering the public safety exception. Indeed, in several cases where courts found that the public safety applied, the

officers likely technically had time to read the defendant a *Miranda* warning yet did not. *See Quarles*, 467 U.S. at 655 (holding that the public safety exception applied even when the defendant "was surrounded by at least four police officers and was handcuffed when the questioning at issue took place" and "there was nothing to suggest that any of the officers were any longer concerned for their own physical safety"); *United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009) (holding that the public safety exception applied to an officer's questions during a traffic stop where he took the time to frisk four individuals and inspect items in the car). Rather, the courts in these cases emphasized the rapidly evolving situations and the officers' need for information to secure the premises.

So too here. The R&R appropriately found that Officer DeWald's question was necessary to ensure officer safety during execution of the search warrant. Daniels's objection will be overruled.

## IV.  Conclusion

For these reasons, the Court overrules Daniels's objections and adopts the R&R [66] in part and overrules it in part. Daniels's motions [23, 24, 25, 33, 34] to suppress are denied. The Court sustains the

Government's objection [74] to the portion of the R&R finding that

Daniels had an objectively reasonable expectation of privacy in the

condominium unit that was searched.

IT IS SO ORDERED this 20th day of December, 2024.

Timothy C. Batten, Sr.
Chief United States District Judge